[Civ. No. 15235.   Second Dist., Div. Three.   Nov. 15, 1946.]

ROMEO SAYRE, Appellant, v. WESTERN BOWL et al., Respondents.

Harold D. Kraft for Appellant.

Don M. Kitzmiller for Respondents.

KINCAID, J. pro tem.—Plaintiff appeals from a judgment in his favor in the sum of $261.87, which he considers insufficient in amount. The cause came to issue on plaintiff's amended complaint setting forth causes of action for breach of contract and for accounting and defendants' answer thereto.

After trial by court and rendition of judgment, the trial judge made and filed his findings. The substance of the evidence, relied upon by defendants as supporting such findings, is as follows: Defendants were copartners operating a bowling alley, liquor and cafe business in the city of Los Angeles under the name of Western Bowl. Prior to August 1, 1943, and during the time that his brother was managing such cafe, the plaintiff had been employed by defendants in several capacities, including that of cook. On the date mentioned defendants employed plaintiff to manage defendants' cafe under an oral agreement whereby the gross receipts of the business were to be turned over to the defendants at the end of each day and the latter would pay all cost of operation, including the payroll, plaintiff to receive a salary of $58 per week and meals. For depreciation, utilities and other general charges, defendants were to retain $135 per month from the net profits, which sum was later increased to $200 per month. Plaintiff, as a bonus over and above his salary, was to receive all net profits in excess of the $135 per month, later $200 per month, with the understanding that all the costs of the operation of said business, payroll, food costs, salaries, replacements, repairs and any other expenses usually or necessarily incurred in connection with the operation of said premises, including a discount of 50 per cent on the meals of certain employees, should be charged against the restaurant receipts before computing such net profits. It was further agreed that plaintiff should continue his employment so long as his ser-

vices were performed in a manner satisfactory to the defendants and he thereupon posted a cash indemnity bond of $170 with them. Plaintiff continued his employment as manager of the restaurant to and including January 31, 1944, during all which period he was paid his weekly salary promptly on the day due. Some four to six weeks following the close of each current month defendants furnished plaintiff with a statement, seven of which are in evidence, showing the operations of the restaurant for the particular month, with all charges and credits, and the thus ascertained sum he was to receive by way of a bonus under the contract of employment. Plaintiff had previously seen monthly statements similar in character which had been handed to his brother during the time that he was managing the cafe and prior to plaintiff's employment in this capacity. Plaintiff never objected to any item covered by the seven monthly statements, which had included the repairs and replacements with which his account had been charged, until he was informed by defendants on January 21, 1944, that his employment was to terminate as of January 31, 1944. At the same time defendant Epstein presented to plaintiff the statement of operations for the month of December, 1943, which showed plaintiff to be entitled to the sum of $1,081.74 as his bonus for that month. Plaintiff then protested being charged with the entire amount of repairs and replacements for the cafe for the reason that, due to such termination of his employment, he would not receive the full benefit thereof. Epstein thereupon offered to credit plaintiff with the sum of $135, the cost of a recently installed toaster, which offer was accepted by plaintiff as being in full for such claim. The evidence reveals no further dispute between the parties as to what amount was still due plaintiff as of this date. His December bonus account was thereupon increased to $1,216.74, which sum was paid him.

On January 31, 1944, the $170 indemnity cash deposit was returned to plaintiff and, prior to a determination as to what his January bonus would amount to, he was given $500 on its account in January, and another $500 in February, 1944. In March, 1944, when the sum was ascertained by defendants as to which plaintiff was entitled for the balance of his bonus due him for his services rendered during the month of January, a check in that amount, being $261.87, was tendered plaintiff, together with the monthly statement, and he was

asked to sign a release of all claims for wages and bonuses. This he refused to do. Defendants in their answer to plaintiff's amended complaint offer to pay this sum to plaintiff as the balance due him.

Plaintiff's primary point on this appeal is that the trial judge, under the evidence herein, erred in refusing to impose against defendants the penalty prescribed in section 203, Labor Code, for wilfully refusing to tender plaintiff his wages in the sum of $261.87 until March, 1944, although defendants now concede they owe him this amount for services performed in January, and for then refusing to pay such wages because of plaintiff's declination to execute a release of any further claims for his services.

The pertinent portions of section 203 read: ''If an employer wilfully fails to pay, without abatement or reduction, in accordance with sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than thirty days. No employee who . . . refuses to receive the payment when fully tendered to him, including any penalty then accrued under this section, shall be entitled to any benefit under this section for the time during which he so avoids payment.''

Section 202, Labor Code, relates to a quitting employee, so is inapplicable here, but section 201 thereof is as follows: ''If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.''

Plaintiff also relies on section 206, Labor Code: ''In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed.''

It will be noted that section 203 concerns itself with ''wages'' to be paid ''without abatement or reduction.'' The meaning of this latter term was before the court in the case of *People* v. *Porter* (1930), 107 Cal.App.Supp. 782 [288 P. 22], wherein its use in the Act of 1919 (Stats. 1919, p. 294, Deering's Gen. Laws, 1931, Act 4743), the predecessor

of the Labor Code sections here in question was considered. We are in accord with the view there expressed that such term means merely "without discount on account of the payment thereof before the time they were payable according to the terms of the contract of employment." As the evidence reveals no attempt on the part of defendants to discount the amount properly due plaintiff it is clear that the provisions of section 203 relating to payment of wages without abatement or reduction have not been violated by them.

Plaintiff argues, however, that the sum of $261.87, denominated a "bonus" by the agreement of the parties, was in fact a part of his wages, was earned and unpaid at the time of his discharge and therefore was due and payable immediately. From this premise he contends that the subsequent delay on the part of defendants in ascertaining and tendering to plaintiff the balance of the net earnings of the business for January constituted a wilful failure to pay his then due wages immediately, so the additional sum of $1,000, his average 30-day period earnings, should be assessed in his favor as a penalty under section 203.

The trial judge, in construing the terms of the contract between the parties and in applying the evidence thereto, was justified in invoking the well-settled rule that "a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court." (*Woodbine* v. *Van Horn* (1946), 29 Cal.2d 95, 103 [173 P.2d 17].) The evidence as to such acts and conduct of the parties, prior to the date of the tender of the $261.87 check, discloses a clear understanding between them that plaintiff was to receive his set salary each week but that the additional sum to which he might be entitled, whether it may be called a bonus or wages, was payable from net profits only, on a monthly basis, after an accounting was had showing all applicable charges and credits, which accounting customarily required four to six weeks to complete. He was at all times paid his weekly salary when due, including the week to and including the day of his discharge. He accepted $500 twice on the so-called bonus account, without complaint or protest, during the succeeding interval. He offered no protest as to the amount finally tendered him in March but did refuse to sign a receipt in full for wages due him.

Since there was no dispute between the parties over wages at the time of plaintiff's discharge nor at the time of the tender to him of the check representing his final share of the profits, section 206 is clearly inapplicable to plaintiff's case. As the sum ultimately found to be due plaintiff as a ''bonus,'' under the construction placed upon the contract by the parties themselves, was not due and payable immediately upon the date of discharge but only some weeks later after an accounting was had between the parties as to the month's business done by the restaurant, the provisions of section 201 do not here apply.

Plaintiff further urges his right to the penalty sought under section 203 upon the basis that defendants refused to pay him the $261.87 because he would not execute a release of any and all other claims or demands that he might have against them for further salary or bonus. He claims this to be a ''condition,'' within the purview of, and forbidden by, section 206. As previously shown, however, the latter section applies only where there is a dispute over wages and none was proved in this case even up to the date of final tender and refusal. Under the circumstances here existing the defendants were justified in asserting, as a condition of the accounting as between the parties pursuant to their contractual arrangement, that the payment of the final amount found by them to be due plaintiff should be based upon a release by him of any further salary or bonus claims against defendants. (See *Manford* v. *Singh* (1919), 40 Cal.App. 700, 702 [181 P. 844] ; *People* v. *Porter, supra,* 107 Cal.App. Supp. 782, 784.) Furthermore, section 203 may be invoked by plaintiff only upon proof that the defendant employers wilfully failed to pay wages due him in accordance with section 201, and such proof is utterly lacking. The penalty sum sought under section 203 was properly denied plaintiff by the court.

Plaintiff directs our attention to an item of $100 which he claims should have been allowed him in addition to the sum represented by the judgment. In response to a question concerning it the defendant Epstein conceded that this sum represented a general entry on the accounts as an arbitrary reserve for contemplated repairs which had never been expended. He could not remember as to whether plaintiff had ever been told of this unused charge against his net

profits share. The testimony of defendant Weiner substantiates these facts. As the monthly statements which were furnished plaintiff by defendants did not itemize the amounts making up the one charge entitled "repairs," he did not ascertain the fact that he had been so overcharged until a time subsequent to the accounting and tender of final check in March, 1944. Plaintiff then, under this undisputed evidence, is entitled to have the judgment in his favor increased by an additional $100.

We have examined and considered the other points made by plaintiff on this appeal and find them to be without merit.

The judgment is hereby modified by striking therefrom the words and figures "Two hundred sixty-one and 87/100 ($261.87)" and by substituting in their place the following: "Three hundred sixty-one and 87/100 ($361.87)." The trial court is hereby directed to amend the conclusions and judgment in accordance herewith. As so modified the judgment is hereby affirmed, appellant to be allowed his costs on appeal.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied December 10, 1946, and appellant's petition for a hearing by the Supreme Court was denied January 14, 1947. Carter, J., voted for a hearing.