[L. A. No. 26046. In Bank. Jan. 27, 1961.]

JAMES S. REID, Respondent, v. OVERLAND MACHINED
PRODUCTS (a Corporation) et al., Appellants.

George C. Black and Patrick Kerrigan for Appellants.

John F. Bremer for Respondent.

Pauline Nightingale, Effie Sparling, William P. Nutter and Milford A. Maron as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—Plaintiff was employed by Overland Machined Products Company on February 25, 1952, as its exclusive sales representative. In this action he seeks an accounting for wages and commissions allegedly earned pursuant to a written contract of employment.

The contract provides: ''For his services rendered herein

and for faithful performance thereof, second party shall receive a commission of five per cent, (5%) of the entire gross business done by first party subsequent to 25th day of February, 1952.

"It is distinctly understood and agreed that second party shall only be entitled to receive any commission or any other sums of money herein specified on such new business, contracts or purchase orders as may be obtained or received by first party subsequent to 25th day of February, 1952, and only then so long as this agreement remains in full force and effect."

The contract guarantees plaintiff certain monthly amounts, and provides that whenever the commission exceeds the guaranteed amounts the balance of the commission "shall be paid . . . if as and when the accounts receivable . . . are paid." The monthly guarantees were paid when due and are not in dispute. Each party is given the power to terminate the contract on 30 days' notice.

The contract was terminated effective November 27, 1953. On February 15, 1954, plaintiff demanded the payments of commissions owed to him and a closing of his account. Defendant sent plaintiff a check for $792.14 bearing an endorsement that the payment was "payment in full for all commissions due" under the contract. Plaintiff returned the check objecting to the endorsement.

Thereafter an accountant employed by plaintiff to examine defendant's books advised defendant that the previous offer of payment was short $15. Defendant then sent plaintiff the original check for $792.14 and another check for $15. The letter accompanying the two checks stated that the payment was made in full payment of all commissions due under the contract. Plaintiff cashed the $15 check, which did not have a restrictive endorsement, and retained and lost the check for $792.14. There was no further communication between the parties until plaintiff filed this action.

The parties stipulated that defendant owes commissions of $792.14 on orders invoiced to the time of the termination of employment, and the defendant has paid this amount into court. Although the parties disagree on defendant's liability for commissions on orders obtained before the termination of employment but invoiced after such termination, the amount of these orders was stipulated to at the trial. The effect of these stipulations is that 5 per cent of such orders is $10,694[1]

---

[1]The figure in the original stipulation was slightly higher. This figure represents deductions made at plaintiff's request.

if all the orders are considered or $4,948.95 if the orders that were changed after their original solicitation are deleted. The latter orders were referred to by the parties as "change orders."

The trial court awarded plaintiff commissions on all of the disputed orders. Defendant challenges this judgment on three grounds: (1) The court erred in its conclusion of law that the evidence failed to establish an accord and satisfaction; (2) the court relied on incompetent evidence in determining that plaintiff is entitled to commissions on the "change orders"; and (3) the court erroneously excluded extrinsic evidence offered to prove that the parties intended that commissions should be paid only on orders invoiced during the employment.

The trial court correctly ruled that there was no accord and satisfaction. Either all or at least $792.14 of the amount of defendant's offer to plaintiff was for wages concededly owed to him. ■ Ordinarily the conditional payment of either an amount concededly owed or an amount in excess of that concededly owed is sufficient consideration for a settlement of a bona fide disputed claim. (*Potter* v. *Pacific Coast Lumber Co.,* 37 Cal.2d 592, 602 [234 P.2d 16]; see Corbin on Contracts, vol. 6, § 1289, p. 128) and an offer and acceptance of such an amount given in full payment for the disputed claim therefore discharges the debt.

■ Labor Code, section 206, however, places wage claims in a separate category. That section provides: "In case of a dispute over wages, the employer shall pay, *without condition* and within the time set by this article, all wages, or part thereof, conceded by him to be due, *leaving to the employee* all remedies he might otherwise be entitled to as to any balance claimed." (Italics added.) Hence in a dispute over wages the employer may not withhold wages concededly due to coerce settlement of the disputed balance. ■ An employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid.

■ Defendants invoke *Sayre* v. *Western Bowl,* 76 Cal. App.2d 793, 799 [174 P.2d 466], for the proposition that section 206 of the Labor Code does not apply to conditional tenders of commissions or bonuses. That case involved the collection of penalty wages and not an accord and satisfaction. Any implication therein that commissions are different from

other wages is inconsistent with Labor Code, section 200, subdivision (a)[2] and is disapproved.

Defendant's contention that Labor Code, section 206, merely provides a statutory remedy for its breach but does not invalidate an accord and satisfaction entered into in violation of the statute is without merit. Section 206 is designed to secure to the wage earner prompt payment of all wages concededly due and it expressly precludes an employer's coercing a settlement of disputed claims by offering conditional payment. "Where a statute prohibits or attaches a penalty to the doing of an act, the act is void even though the statute does not expressly pronounce it so. . . . The imposition by statute of a penalty implies a prohibition of the act referred to and a contract founded upon such act is void." (*Stonehocker* v. *Cassano,* 154 Cal.App.2d 732, 736 [316 P.2d 717]; accord: *Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14].)

It has long been settled that a claim will not be discharged when the purported accord and satisfaction violates the state law. In *Sierra etc. Park Co.* v. *Universal Elec. etc. Co.,* 197 Cal. 376, 387 [241 P. 76], we refused to discharge a claim because the alleged accord and satisfaction would have resulted in utility payments contrary to the law, stating that: " 'The discharge of claims by way of accord and satisfaction is dependent upon contract express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction.' "

The two checks were mailed to plaintiff as a single conditional payment in satisfaction of his claim for wages. Since at least $792.14 was for the payment of wages concededly due and the tender thereof was conditioned on the release of all additional liability no accord and satisfaction could result from the retention or cashing of either check. Plaintiff was therefore entitled to recover on the contract.

We have concluded, however, that the judgment must be reversed because of errors in the admission and exclusion of evidence.

The trial court relied on incompetent evidence for its determination that the contract required payment of commissions on the "change orders." At the end of the trial the court instructed plaintiff's attorney to prepare findings and

---

[2]Subdivision (a) of Labor Code, section 200, defines wages as follows: " '*Wages*' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

judgment awarding plaintiff the $792.14 concededly due and $4,948.95 representing 5 per cent commission on all unchanged orders obtained before termination of employment regardless of when invoiced. The court stated, however, that the "change orders" amounting to $115,625.61 are not part of the "gross business done" under the contract and "accordingly plaintiff is not entitled to commission thereon." Plaintiff then submitted a "Memorandum After Examining Change Order, Purchase Orders and Invoices." In this memorandum plaintiff stated that he had just spent three days reviewing defendant's invoices and that most of the changes on the "change orders" were made before the termination of the employment contract and that the remaining changes were of a minor nature. After reciting some of these changes plaintiff's attorney suggested that plaintiff be awarded commissions on $114,908.76 of the $115,625.61 "change orders." The court then awarded plaintiff a judgment for $11,486.52 instead of $5,741.09 as it had originally proposed.

The "Memorandum After Examining Change Orders, Purchase Orders and Invoices" was simply an assertion of facts by counsel as to matters not in evidence. Defendant had no opportunity to cross-examine plaintiff's counsel on the statement or to offer evidence in rebuttal. Statements in the pleadings or memoranda of counsel are hearsay, self-serving, and incompetent as evidence. (*Jeffers* v. *Screen Extras Guild, Inc.*, 134 Cal.App.2d 622, 623 [286 P.2d 30] ; *Mitsuuchi* v. *Security-First National Bank*, 103 Cal.App.2d 214, 219 [229 P.2d 376] ; see 6 Wigmore, Evidence, § 1709, pp. 39-40.)

Reliance by the court on this memorandum was clearly prejudicial, for it resulted in an increase in the judgment from $5,741 to $11,486.52. A judgment must be reversed when it is clear that a court has relied on improper evidence to arrive at it. (*Fewel* v. *Fewel*, 23 Cal.2d 431, 433 [144 P.2d 592] ; *C. O. Bashaw Co.* v. *Wood & Stevens, Inc.*, 72 Cal. App. 94, 101 [236 P. 346].)

Plaintiff contends, however, that the court's reliance on the memorandum was not prejudicial, on the ground that the parties had stipulated that $115,625.61 of "change orders" were received before the termination of the contract. Defendant stipulated only to the amount of such orders and not to the amount of the changes therein before or after the termination of the contract and did not concede liability for commissions on these orders. Under the trial court's interpretation of the contract plaintiff is not entitled to commissions

on any increases on the "change orders" after the termination of the contract. There is no competent evidence in the record from which the amount of the changes after the termination of employment can be computed.

 The trial court also erred in excluding evidence offered to aid in the interpretation of the contract. Defendant offered to prove that during preliminary negotiations the parties agreed that to avoid tracing the date on each order for the purpose of determining the amount of commission upon termination of the contract, the commission should be paid upon the gross business invoiced during the employment. Defendant further offered to prove that plaintiff was paid and understood the contract to require payment of commissions on business invoiced immediately after he began his employment even though the orders were obtained before his employment.

This evidence should have been admitted. When the language used in the contract is fairly susceptible to the construction claimed by one of the parties, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining its true meaning. (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 524 [297 P.2d 428].) " 'The acts of the parties under the contract afford one of the most reliable means of arriving at their intention; and, while not conclusive, the construction thus given to a contract by the parties before any controversy has arisen as to its meaning will, when reasonable, be adopted and enforced by the courts.' " (*Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.App.2d 744, 753 [8 Cal.Rptr. 427, 356 P.2d 171].)

The judgment is reversed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.