[Civ. No. 25976. Second Dist., Div. Three. Feb. 8, 1963.]

STANLEY P. ROBERTS et al., Plaintiffs and Respondents, v. JAMES J. REYNOLDS, Defendant and Appellant.

L. Dean Petty and Jean Wunderlich for Defendant and Appellant.

Frank J. Kanne, Jr., for Plaintiffs and Respondents.

FORD, J.—The plaintiffs sought declaratory relief with respect to the meaning of an agreement made after a business venture of a corporation in which the parties were interested had failed. The agreement was deposited in an escrow by means of which the plaintiffs transferred their corporate stock to the defendant. The defendant has appealed from a judgment adverse to his contention with respect to the extent of his contractual obligation.

The findings of fact of the trial court were in part as follows: 1. On or about March 17, 1958, the plaintiff Stanley P. Roberts was the president of Stanwar's Inc., a California corporation, and the plaintiff Warren S. Roberts was secretary and treasurer thereof. Fifty-one per cent of the corporate stock was owned by the plaintiffs and 49 per cent was owned by the defendant. 2. Commencing about March 1957 the corporation operated a restaurant "under a management contract with plaintiffs." The venture was unsuccessful and in February 1958 the plaintiffs ceased to act as managers of the business. 3. "In February, 1958 the plaintiffs and the defendant verbally agreed that the plaintiffs would resign as officers and directors and would assign their stock in said corporation to defendant in consideration of his undertaking to indemnify the plaintiffs against certain personal liabilities incident to the operations of said business. The plaintiffs did so resign and did so assign their stock to defendant. The defendant executed and delivered to plaintiffs and plaintiffs approved and accepted in writing an agreement between them as follows:

'For value received, the undersigned does hereby agree to indemnify Stanley P. Roberts and Warren S. Roberts against any loss as a result of any taxes that may be owed.

by Stanwar's Inc., which said Stanley P. Roberts and Warren S. Roberts have personally guaranteed. This guarantee shall cover any and all of said taxes up to the date hereof.

Dated: March 17, 1958

James J. Reynolds'

That said written agreement superseded all prior oral negotiations. That said written agreement was prepared by the defendant or his agent.'' 4. The Director of Internal Revenue has made demand upon the plaintiffs as responsible officers of the corporation for ''certain delinquent employment taxes'' for the fourth quarter of 1957 and for the first quarter of 1958 in the total amount of $5,001.15 and has threatened to assess further sums as penalties and interest if the claim is not paid forthwith. 5. By the written agreement the parties intended that the defendant indemnify the plaintiffs ''for all loss to them resulting from personal liability for taxes owing by the corporation,'' including ''both taxes on which the plaintiffs assumed personal liability by express action and those on which they were personally liable by operation of law.''[1]

By the judgment it was declared that the agreement was one of indemnity against any loss as a result of any taxes owing by the corporation ''as to which the plaintiffs were personally liable, whether said liability was created by express action or by operation of law.'' A further declaration was that the obligation under the agreement included the claim for $5,001.15, together with any further penalties or interest, and that, upon payment of the whole or any part thereof by the plaintiffs, the defendant was bound to reimburse the plaintiffs for the amount or amounts so paid.

At the trial it was the defendant's contention that the agreement was free from ambiguity and that, therefore, extrinsic evidence was not admissible upon the issue of the meaning of the agreement.[2] However, over the defendant's

---

[1] In support of their position the plaintiffs make reference to section 6672 of the Internal Revenue Code of 1954. (26 U.S.C.A. § 6672.) That section is in part as follows: ''Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .''

[2] ''It is said to be the California rule that if no ambiguity or uncertainty is asserted, and the writing has a clear meaning on its face, parol evidence is not admissible to interpret it. The theory is that unless there

objection based on that ground, such evidence was received. Portions thereof will be hereinafter stated.

The defendant, when called as a witness under the provisions of section 2055 of the Code of Civil Procedure, testified that "during the period of the escrow" (relating to the transfer of the plaintiffs' shares of stock to the defendant) the subject of taxes was discussed, the discussion being as follows: "They wanted to know what they would do about taxes and I said, 'Well, as far as I am personally concerned, I'm not going in back of and guarantee anything that you haven't guaranteed personally,' so as a result of that an agreement was drawn up." Further testimony of the defendant was: "Q. Before the agreement was drawn and you said what you have just testified to, was there any discussion by you or any inquiry by you as to what taxes they had personally guaranteed? A. No. No, there was no discussion. Q. Did you know of any taxes that they had personally guaranteed? A. No. Q. Did you know whether or not Stanwar's Inc. was indebted on withholding taxes? A. I didn't know. I didn't ask and they didn't volunteer. Q. What taxes did you have in mind that they had personally guaranteed? A. They had a number of checks come back which were then in the hands of the co-ordinator that had taken it over under Chapter XI. I understood that there was some tax checks that had come back and Warren [one of the plaintiffs] asked me at the time we were in escrow, 'What about the taxes?' I said, 'Well, any taxes you personally guaranteed I will assume.' . . . The Court: . . . You did know that some checks had been returned which had been given in payment of taxes, however? The Witness: That's right, your Honor. . . . Q. By Mr. Kanne [counsel for plaintiffs]: You intended by 'personally guarantee' to mean taxes on which the Roberts had issued checks which had not been honored by the bank? A. I didn't intend any such a thing, Mr. Kanne. . . . Q. By Mr. Kanne: By that answer do you mean that when the checks that had been given for taxes had been returned—did you understand that to mean that the Roberts had thereby personally guaranteed those taxes? . . . The Witness: No, I did not understand any

is some ambiguity or uncertainty there is no need for the extrinsic evidence; the *plain meaning* of the words should be accepted and not disturbed by evidence showing that they were used in a different sense. [Citations.]" (Witkin, Cal. Evidence, § 373, p. 416; see also *Laux* v. *Freed*, 53 Cal.2d 512, 523 [2 Cal.Rptr. 265, 348 P.2d 873].)

such thing.'' The defendant also testified as follows: ''Q. Did the Roberts tell you of any taxes that they had personally guaranteed? A. No, they didn't. . . . Q. By Mr. Kanne: What did either of the Mr. Roberts say themselves that resulted in the words 'guarantee against taxes' being injected into this acquisition by you of the Stanwar's stock? A. They said, 'What are we going to do about taxes?' And I said, 'Any taxes that you have personally guaranteed I will be responsible for.' ''

The defendant identified the escrow instructions used and they were received in evidence. The instructions were signed by all the parties. Therein it was stated that the plaintiffs had agreed to assign their shares of stock in the corporation to the defendant and his wife who had agreed to take over those shares upon the terms and conditions thereinafter set forth. Part of the documents which the plaintiffs undertook to place in the escrow were as follows: (1) A ''management agreement'' between the corporation and the plaintiffs, together with an agreement by the plaintiffs ''to terminate'' the management agreement; (2) a note for $5,000 made by the corporation in favor of the plaintiffs or one of them, together with an assignment thereof by the payee or payees to the defendant; (3) a release by Leon Abajian of the corporation's liability on a note in his favor for the sum of $5,000; (4) two notes executed by the corporation, each in the amount of $950, one being in favor of one plaintiff and one being in favor of the other plaintiff, together with assignments thereof to the defendant. Documents which the defendant undertook to place in the escrow were described as follows: ''(a) Agreement by Second Party [the defendant] to assume personal liability of First Party [the plaintiffs] on the Apfel Note of approximately $10,900.00. (b) Agreement by Second Party relieving First Party of any and all liabilities personally guaranteed by them for back taxes in connection with the operation of Stanwars Inc.'' Also received in evidence was a document embodying the agreement as to taxes which has been set forth herein in the résumé of the findings of fact. Another document received in evidence was one executed by the plaintiffs relating to the termination of their management contract.

The manager of the escrow department of the bank at which the escrow instructions were prepared testified when called as a witness on behalf of the defendant. He identified a copy of the document in the escrow file relating to taxes,

upon the bottom of which the plaintiffs had signed in his presence a notation that it was approved "as to form." The witness also produced from the escrow file another document signed by the defendant and containing a notation, signed by one of the plaintiffs, that it was approved "as to form." The latter document related to the Apfel note.[3] As to conversation which occurred in the course of the escrow, the witness testified: "A. Well, I can't repeat exactly what they said but the instruction to me was to prepare the instructions to cover an agreement in which the second party relieved the first party of any and all liabilities personally guaranteed by him. Q. Was that with reference to taxes or the note, or what? Would you identify them. A. Well, all these agreements were discussed and that was the outcome of the discussion that I drew the instructions for."

The plaintiff Warren S. Roberts testified that about January 1958 the parties had several discussions. Part of the witness' testimony was: "Discussion came up then about the withholding taxes and Jim [the defendant] said that he would take over any obligation that we had in the matter." Funds were to be received from the Diner's Club and the defendant asked that such money be used for the purpose of paying the rent for the business premises. As to what was said in response, the witness testified as follows: "We said to Jim—this was previous to him making the final deal with us on taking the place over—we said, 'We want to be indemnified by you for all obligations if we turn this money over,' because this was one of the last cash assets we had at that time, and he said he would." The witness further testified that at the office of the bank which was handling the escrow he said to the defendant, "These escrow instructions do not contain the indemnification on the taxes, on the withholding taxes," and the defendant read the instructions and said, "I

---

[3]The body of that document was as follows:
"To: Stanley P. Roberts
 Warren S. Roberts

"For value received, the undersigned does hereby agree to indemnify and hold harmless said Stanley P. Roberts and Warren S. Roberts from any loss under that certain note in favor of Apfel executed by Stanwar's, Inc., a California corporation, and said Stanley P. Roberts and Warren S. Roberts, which said note has a present unpaid balance of approximately $10,900.00.

"Dated: March 17, 1958.

 S James J. Reynolds
 James J. Reynolds''

will have them redrawn," which he thereafter did. On a number of occasions the plaintiffs and the defendant had discussed the obligations of the business, including the tax obligation.

The plaintiff Stanley P. Roberts testified that a check of the corporation dated January 31, 1958, which was in the amount of $2,136.15 and was payable to the Internal Revenue Service, was not honored by the bank on which it was drawn.

The escrow instructions and the other documents relating thereto which contained undertakings by one or more of the parties were all concerned with the same subject matter, namely, the transfer to the defendant of the plaintiffs' interest in the corporation and its business. They were executed as parts of substantially one transaction and are to be construed together as one agreement. (*Harm* v. *Frasher*, 181 Cal.App.2d 405, 412-413 [5 Cal.Rptr. 367].) As stated in the case last cited, at pages 413-414: "The use of extrinsic evidence to lay the foundation for a consideration of several instruments as part of a single transaction does not involve a violation of the parol evidence rule. (*Merkeley* v. *Fisk*, 179 Cal. 748, 754 [178 P. 945]; *Cadigan* v. *American Trust Co.*, 131 Cal.App.2d 780, 782 [281 P.2d 332]; *Citizens Nat. Trust & Sav. Bank* v. *Arrowhead Springs Beverage Co.*, 126 Cal.App. 550, 554 [14 P.2d 821]; *Torrey* v. *Shea*, 29 Cal.App. 313, 316 [155 P. 820].)"

In the escrow instructions the obligation relating to taxes is designated as "any and all liabilities personally guaranteed by them [the plaintiffs] for back taxes in connection with the operation of Stanwars Inc." Aside from the indication that the taxes are those arising from the operation of the corporate business, there is no indication of the exact nature of "any and all liabilities personally guaranteed" to which reference is made or of the circumstances under which any such "guarantee" had arisen. If a strict meaning is given to the words "personally guaranteed" so as to give rise to the concept of an express guaranty, such a guaranty does not appear to fit readily into the category of a commonly known or used type of agreement with respect to taxes of the indicated nature. But, as said in *Meyer* v. *Moore*, 72 Cal. App. 367 [237 P. 550], at page 373: "The words 'guaranty' or 'guarantee' do not always import a contract of guaranty." Rather, such words may be used with reference to an obligation which is primary in nature as distinguished from one which is secondary. (See *First Securities Co., Ltd.* v. *Story*,

9 Cal.App.2d 270, 273 [49 P.2d 862] ; *Yankelewitch* v. *Beach,* 115 Cal.App. 629, 632 [2 P.2d 498] ; *Ackley* v. *Prime,* 99 Cal.App. 534, 540 [278 P. 932].)

The core of the controversy is in the problem of the construction to be placed upon the words ''any taxes that may be owed by Stanwar's, Inc., which [the plaintiffs] . . . have personally guaranteed.'' The plaintiffs' claim is that such language embraced a new and primary obligation to the federal government to which they may have subjected themselves under the pertinent federal statutory law (see footnote 1 to this opinion) as the result of the manner in which they had disbursed funds possessed by the corporation, the measure of such liability being governed by the amount of taxes thereby caused to be unpaid by the corporation to the federal government. (See *United States Fidelity & Guaranty Co.* v. *United States,* 164 F. Supp. 703.)

Since the language of the agreement does not preclude the construction for which the plaintiffs contend, extrinsic evidence bearing upon the issue of the true meaning thereof was admissible. The applicable rule is succinctly expressed in *Reid* v. *Overland Machined Products,* 55 Cal.2d 203 [10 Cal.Rptr. 819, 359 P.2d 251], at page 210, as follows: ''When the language used in the contract is fairly susceptible to the construction claimed by one of the parties, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining its true meaning.'' To exclude such evidence in the present case would be to ignore the admonition of Dean Wigmore that: ''Once freed from the primitive formalism which views the document as a self-contained and self-operative formula, we can fully appreciate the modern principle that the words of a document are never anything but indices to extrinsic things, and that therefore *all the circumstances must be considered which go to make clear the sense of the words,*—that is, their associations with things.'' (9 Wigmore on Evidence (3d ed.) § 2470, p. 227.)

The governing law with respect to appellate review of the determination made by the trial court is stated in *Scott* v. *Sun-Maid Raisin Growers Assn.,* 13 Cal.App.2d 353 [57 P.2d 148], at page 359: ''When the meaning of the language of a contract is uncertain or doubtful and parol evidence is introduced in aid of its interpretation, the question of its meaning is one of fact and a finding of fact made by the trier of facts embodying his interpretation of

the doubtful language must stand if not lacking in evidentiary support." In the present case there is the necessary evidentiary support for the determination of the trial court.[4] In fact, it is a fair inference from the record that if the agreement does not apply to the obligation to which the plaintiffs may have subjected themselves under the pertinent law, it is practically meaningless because there is no other liability to which it could have reference.

The defendant also asserts that, even if the agreement could be held to be applicable to the claim of the federal government in the amount of $5,001.15, it was error to include within the scope of such contractual obligation the items of "any further penalties or interest." But the reasonable construction of the agreement is that the term "taxes" was intended to embrace the total civil obligation of the plaintiffs with respect to the amount of the unpaid tax liability of the corporation. That obligation includes any interest or penalties of a civil nature. (See *Headley* v. *Knox*, 133 F. Supp. 36, 37.)[5]

The final contention of the defendant is that the action for declaratory relief should not have been entertained since there had been no actual determination of any liability to the federal government on the part of the plaintiffs and hence there was "only a possible future controversy, instead of a

---

[4] It should also be noted that the determination of the trial court is sound when viewed in the light of the reasoning of the concurring opinion in *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665]. It was there said at page 776: "Words are used in an endless variety of contexts. Their meaning is not subsequently attached to them by the reader but is formulated by the writer and can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended. (Cal. Code Civ. Proc., §§ 1856, 1860; see Wigmore on Evidence (3rd ed.) §§ 2458-2478; 'The Theory of Legal Interpretation,' 12 Harv.L.Rev. 417, by Oliver Wendell Holmes (then Chief Justice of Massachusetts.)" (See also concurring opinion in *Laux* v. *Freed*, 53 Cal.2d 512, 525-527 [2 Cal. Rptr. 265, 348 P.2d 873]; 3 Corbin on Contracts (1960) §§ 536, 542, 542A, 543.)

[5] *Headley* v. *Knox*, 133 F. Supp. 36, involved penalty assessments levied against persons who had been officers of a corporation and who, as such officers, were alleged to have wilfully failed to account for and pay over taxes collected and withheld by the corporation. In denying a preliminary injunction to enjoin action by the Director of Internal Revenue, the court said (133 F.Supp. at p. 37): "As will be hereinafter noted, it would appear that, under the present decisions, the type of penalty herein asserted is of a civil nature, and within the scope of the word 'tax', as used in the applicable statutory provision."

present or immediately threatened one." But under the facts of the present case that contention is without merit. The governing law is stated in *Mefford* v. *City of Tulare*, 102 Cal.App.2d 919 [228 P.2d 847], at page 922, as follows: "The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation and whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion. Unless a clear abuse of discretion is shown, the trial court's decision will not be disturbed on appeal. (*Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442, 448 [211 P.2d 302].) As was said in *Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 729 [146 P.2d 673, 151 A.L.R. 1062]: 'The purpose of a declaratory relief judgment is "to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." ' "

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 3, 1963.