106 Cal.Rptr.2d 873 (2001)
89 Cal.App.4th 239
Timothy L. SMITH, Plaintiff and Appellant,
v.
RAE-VENTER LAW GROUP, Defendant and Appellant.
No. H018775.
Court of Appeal, Sixth District.
May 21, 2001.
Review Granted August 29, 2001.
*877 Timothy L. Smith, in pro. per., Gregg L. Kays, Norland & Kays, San Jose, for Plaintiff and Appellant.
Stephen J. Hirschfeld, Felicia R. Reid, Donna M. Rutter, Curiale, Dellaverson, Hirschfeld, Kelly & Kraemer, San Francisco, for Defendant and Appellant.
WUNDERLICH, J.
This appeal arises out of a dispute between Timothy L. Smith ("Smith") and his former employer, the Rae-Venter Law Group ("RVLG"). Following his resignation from RVLG, Smith presented disputed wage claims to the California Labor Commission. At an administrative hearing on those claims, Smith achieved partial success: he secured an award that included vacation pay and expense reimbursements but his claims for a bonus and for statutory waiting time penalties were rejected. Dissatisfied with the labor commissioner's decision, Smith appealed to the superior court, which conducted a trial de novo. At the conclusion of that trial, the court granted Smith the same relief awarded him by the labor commissioner *878 except that it added interest on his non-wage claims. Based on its determination that Smith had succeeded in his appeal from the labor commissioner's decision, the trial court denied RVLG the statutory attorneys' fees and costs it sought.
RVLG appeals, claiming the trial court erred in denying its fees and costs and in awarding Smith's costs. Smith cross-appeals, asserting that he is entitled to statutory waiting time penalties. As we explain below, we agree with RVLG. We therefore reverse the judgment to the extent it denies RVLG its fees and costs and we remand the matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
RVLG, a law firm specializing in biotechnology patent law, first began operations in September 1995. Smith, then a recent law school graduate with a Ph.D. in molecular biology, joined RVLG at its inception as an associate attorney.
Smith resigned his employment with RVLG a year later, in September 1996. In his letter of resignation, Smith asked RVLG to pay him for four weeks of accrued vacation and to reimburse him for certain business expenses and for health insurance. RVLG responded with a written memorandum in which it disputed both Smith's claim for vacation wages and his business expense claim. RVLG did reimburse Smith for health insurance premiums as demanded, however.
Unhappy with RVLG's resolution of his demands, Smith complained to the California Labor Commissioner ("commissioner"). In October 1996, the commissioner gave RVLG notice of Smith's claims. That notice repeated Smith's claims for vacation wages and for reimbursement of business expenses. In addition, Smith claimed entitlement to unpaid bonuses and sought reimbursement of a deduction taken from his final paycheck. A preliminary conference, set for November 1996, failed to resolve the disputed claims. Thereafter, in July 1997, the commissioner filed a formal complaint on Smith's behalf. Like the earlier notice, the complaint sought reimbursement for claimed business expenses and for the deduction from Smith's final pay. The complaint also repeated Smith's earlier demand for vacation and bonus wages, although in somewhat higher amounts. In addition, the complaint included a new claim for reimbursement of periodic deductions taken from Smith's wages for unemployment insurance. The complaint also requested penalty wages and interest. (Labor Code, §§ 203, 98.1.)[1]
In late August 1997, a labor commission hearing officer conducted a hearing on Smith's complaint. Several days later, in early September 1997, the hearing officer made an award to Smith totaling $8,878.57. The award included $6,865.31 in wages, representing payment for four weeks of vacation together with reimbursement for the unemployment insurance deductions; it also included statutory interest on those wages, which amounted to $632.94; finally, it included "other compensation" totaling $1,380.32, the amount of the claimed business expenses. The hearing officer found against Smith on his other claims. Thus, the hearing officer rejected Smith's claim for $12,000 in bonuses. She also denied Smith's claim for $411.54 deducted from his final pay, based on her finding that the sum represented duplicate compensation to him. Finally, the hearing officer determined that no waiting time penalties were due, since a bona fide dispute existed between the parties regarding Smith's wage *879 claims. The labor commission decision was served on the parties by mail.
Within 10 days, RVLG sent the commissioner the full amount of the award, by cashier's check made payable to Smith. A week later, on September 19, 1997, Smith filed his timely notice of appeal, seeking a trial de novo on his claims. As a result of Smith's appeal, the commissioner returned RVLG's check.
In February 1998, a two-day court trial de novo was conducted in Santa Clara County Superior Court. In his trial brief, Smith listed his claimed damages, which included unpaid vacation and bonus wages, unreimbursed business expenses, and unauthorized deductions from his pay, plus interest on all of those amounts. He also sought waiting time penalties. At trial, both parties submitted testimonial and documentary evidence and written and oral argument. The court then took the matter under submission, filing a memorandum of decision less than two weeks later. The trial court concluded that Smith was entitled to payment for vacation wages and to reimbursement both for the unemployment insurance deductions from his pay and for the unreimbursed business expenses, together with interest on all of those amounts from the date of his termination. However, like the commissioner, the court refused to award Smith the other amounts he sought, including $12,000.00 in bonuses, $411.54 deducted from his final pay, and $9,966.40 in waiting time penalties.
So far as the record discloses, Smith did not object below to the trial court's ruling. RVLG, on the other hand, challenged the court's decision to award Smith interest on his nonwage claims (the business expenses). RVLG also made a post-trial motion for statutory attorneys' fees and costs. In April 1998, the trial court issued a formal order after hearing, in which it denied RVLG's motion for fees and costs and overruled RVLG's objections to the statement of decision.
Judgment was entered on May 4, 1998. Smith filed a memorandum of costs three days later.
In July 1998, RVLG filed a notice of appeal. Smith's cross-appeal followed. Both are now before us.

ISSUES
The primary issue presented by RVLG's appeal is its entitlement to statutory attorneys' fees and costs. That issue turns on a determination of whether Smith was successful in his appeal from the labor commissioner's decision. Secondarily, RVLG contests the trial court's post-judgment award to Smith of his costs of suit.
The question raised by Smith's cross-appeal is whether the trial court erred in denying him statutory waiting time penalties.

DISCUSSION
Before turning to the specific issues before us, we begin with a brief review of the procedural context in which this dispute arose. As noted above, Smith first brought his unresolved post-termination claims to the Labor Commissioner.[2] The Labor Code specifically authorizes such a procedure as an alternative to a civil action. "If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek judicial relief by filing an ordinary *880 civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek administrative relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8." (Cuadra v. Millan (1998) 17 Cal.4th 855, 858, 72 Cal.Rptr.2d 687, 952 P.2d 704, original italics, disapproved by on another point in Samuels v. Mix (1999) 22 Cal.4th 1, 4, fn. 4, 91 Cal.Rptr.2d 273, 989 P.2d 701. See generally, Post v. Palo/Haklar & Associates (2000) 23 Cal.4th 942, 946-948, 98 Cal.Rptr.2d 671, 4 P.3d 928.)
The labor commissioner has the authority to investigate employee complaints and to conduct hearings in actions "to recover wages, penalties, and other demands for compensation." (§ 98, subd. (a).) At the conclusion of any such hearing, the commissioner files a written order, decision, or award. (§ 98.1.) The commissioner's award "shall accrue interest on all due and unpaid wages ... until the wages are paid from the date that the wages were due and payable...." (§98.1, subd. (c). Cf., Nordquist v. McGraw-Hill Broadcasting Co. (1995) 32 Cal.App.4th 555, 573-577, 38 Cal.Rptr.2d 221.) A labor commission award may include statutory "waiting time" penalties, which are assessed against employers who willfully fail to pay wages when due. (§ 203.)
Both parties have the right to appeal the commissioner's decision to the trial court. (§ 98.2, subd. (a).) Although denominated an "appeal" from the decision of the labor commissioner, the proceeding in the trial court is de novo. (Ibid.; Post v. Palo/Haklar & Associates, supra, 23 Cal.4th at pp. 947-948, 98 Cal.Rptr.2d 671, 4 P.3d 928.) It is a new trial in the fullest sense: the commissioner's decision is entitled to no weight whatsoever, and the facts presented to the trial court may include entirely new evidence. (Post v. Palo/Haklar & Associates, supra, 23 Cal.4th at pp. 947-948, 98 Cal.Rptr.2d 671, 4 P.3d 928.) Thus, the trial court hears the dispute "not as an appellate court, but as a court of original jurisdiction, with full power to hear and determine it as if it had never been before the labor commissioner." (Collier & Wallis, Ltd. v. Astor (1937) 9 Cal.2d 202, 205, 70 P.2d 171.) "The decision of the trial court, after de novo hearing, is subject to a conventional appeal to an appropriate appellate court." (Post v. Palo/Haklar & Associates, supra, 23 Cal.4th at p. 948, 98 Cal.Rptr.2d 671, 4 P.3d 928.)
The statute also provides for an award of attorneys' fees and costs by the trial court, but only in the event that the party seeking judicial review "is unsuccessful in the appeal." (§ 98.2, subd. (c).) RVLG's appeal requires us to construe this provision, which each party interprets differently. We first consider Smith's cross-appeal, however, since its resolution in his favor would establish his success in the labor commission appeal under either party's interpretation of the statute.

I. Smith's Cross Appeal.

A. Standard of Review.
In his cross-appeal, Smith contends that the trial court erred in denying him statutory waiting time penalties. The parties disagree on the appropriate standard by which we review this claim of error. Smith asserts that his cross-appeal entails statutory interpretation only and thus presents a question of law for our independent review. For its part, RVLG contends that the cross-appeal turns on disputed evidence of RVLG's good faith. RVLG thus urges a substantial evidence review.
We agree with RVLG that the cross-appeal depends on the resolution of *881 disputed factual issues. For that reason, we test Smith's claim of error against the substantial evidence rule. (Nordquist v. McGraw-Hill Broadcasting Co., supra, 32 Cal.App.4th at p. 561, 38 Cal.Rptr.2d 221.) "Thus, our authority begins and ends with a determination whether, on the entire record, there is any substantial evidence that is, of `"ponderable legal significance,"' reasonable, credible and of solid valuecontradicted or uncontradicted, which will support the judgment. As long as there is such evidence, we must affirm. [Citation.]" (Ibid. Accord, Cardenas v. Mission Industries (1991) 226 Cal.App.3d 952, 958-959, 277 Cal.Rptr. 247.)

B. Entitlement to Statutory Penalties.
Upon termination of employment, a departing employee is entitled to all earned but unpaid wages. (§ 201.) Wages are defined as "all amounts for labor performed by employees...." (§ 200, subd. (a).) Wages include earned but unused vacation pay. (Suastez v. Plastic Dress-Up Co. (1982) 31 Cal.3d 774, 779, 183 Cal.Rptr. 846, 647 P.2d 122.) An employer must pay all the wages due a departing employee within the statutory time. (§ 202.)[3] In the event an employer willfully fails to pay an employee's final wages when due, the employer is subject to statutory "waiting time" penalties. (§ 203.)[4]
This cross-appeal turns on whether RVLG's failure to pay wages due Smith was willful. "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." (Cal. Code of Regs., tit. 8, § 13520.) "However, to be at fault within the meaning of the statute, the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, `willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done. [Citation.]" (Barnhill v. Robert Saunders & Co. (1981) 125 Cal.App.3d 1, 7-8, 177 Cal.Rptr. 803, italics omitted.) "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." (Cal.Code of Regs., tit. 8, § 13520. See also In re Trombley (1948) 31 Cal.2d 801, 808, 193 P.2d 734: "[A] dispute in good faith as to whether any wages were due would be a *882 defense to an action for such penalties. [Citation.]") The existence of a good faith defense to the payment of wages generally presents a question of fact. (Barnhill v. Robert Saunders & Co., supra, 125 Cal. App.3d at p. 8, 177 Cal.Rptr. 803, citing Davis v. Morris (1940) 37 Cal.App.2d 269, 274, 99 P.2d 345.)
Smith maintains that RVLG willfully failed to pay him both for accrued vacation and for unauthorized deductions from his pay for unemployment insurance. The trial court apparently disagreed, since it expressly declined to award Smith any waiting time penalties. To assess Smith's argument that the trial court erred in refusing to award statutory penalties, we turn to an examination of the record to determine whether substantial evidence supports the trial court's implied finding that RVLG had a good faith defense to Smith's claims for vacation wages and for return of the unauthorized deductions.[5]

1. Vacation Wages.
In the proceedings below, Smith's claim for vacation wages depended on the amount of vacation time both earned and used. At trial, the parties presented conflicting evidence on both points. On the issue of vacation accrual, RVLG presented testimony that Smith, like its other employees, earned three weeks of paid vacation per year. Smith offered evidence that he was promised four weeks' vacation. The second point of contention was how much vacation Smith had used during his year with RVLG. RVLG's founder and manager, attorney Barbara Rae-Venter ("Rae-Venter") testified that she reviewed Smith's timesheets to determine whether he had taken vacation on a given day. In support of that testimony, RVLG submitted timesheets representing fourteen workdays for which Smith failed to record any billable or administrative work for the firm, and a number of other daily timesheets on which Smith recorded work time of two hours or less. RVLG charged those days against Smith's vacation balance as full-day or half-day absences. Smith disputed RVLG's characterization of those days as vacation time.
The trial court ultimately determined that Smith was owed a full four weeks of vacation pay at the time of his resignation. The court thus found for Smith as to both vacation accrual and use.
But the court nevertheless declined to impose waiting time penalties on RVLG for the vacation wages it determined were due Smith. By implication, then, the court concluded that RVLG acted in good faith when it refused to pay Smith's vacation claims. In considering RVLG's good faith defense, the trial court had the benefit of observing the parties' demeanor during their conflicting testimony about the firm's vacation policies and practices. The court also had documentary evidence to support RVLG's interpretation of its policy. Taken together, this constitutes substantial evidence to support the court's implied *883 finding that the employer's failure to pay vacation wages was not willful.

2. Deductions.
Smith next argues that the trial court erred in refusing to assess waiting time penalties for RVLG's unauthorized deductions from Smith's pay for unemployment insurance. We disagree. We find substantial evidence in the record to support the RVLG's good faith defense.
The unauthorized deductions occurred over time during Smith's employment with RVLG. The total amount involved is $246.60. Smith apparently did not discover the erroneous deductions for nearly a year after he quit: neither his resignation letter nor his initial wage claim with the commissioner mentioned the deductions. Rae-Venter testified that the deductions resulted from an inadvertent error in the payroll software she used when RVLG first opened its doors. She further testified to her belief that she had reimbursed Smith when the software error came to light, at the same time she repaid the other affected RVLG employees. Smith made no claim to the contrary until shortly before the labor commission hearing. That claim was one of several that were resolved at the hearing, with the hearing officer ruling in Smith's favor as to the deductions but declining to award waiting time penalties in respect of those deductions. Once Smith's claims were resolved at the administrative hearing, RVLG promptly paid the award, which included payment for the questioned deductions; its payment was returned when Smith requested trial de novo on his claims. Smith nevertheless claims that RVLG's failure to pay the deductions promptly was willful as a matter of law.
Both parties raise a number of procedural and substantive points on this question. In our view, however, the analysis is straightforward. It boils down to two simple issues: whether RVLG acted intentionally in taking the unauthorized deductions from Smith's pay and whether it acted willfully in refusing to repay them. Both issues turn on disputed facts, which were resolved in RVLG's favor at trial. As to the first issue, the trial court apparently concluded that the deductions were taken inadvertently and thus unintentionally. Rae-Venter's testimony constitutes substantial evidence in support of that finding. On the second question, the court presumably determined that RVLG was not willful in failing to repay the deductions sooner. Substantial documentary evidence in the record supports this implied finding. It appears that this particular claim first emerged in July 1997, as part of the labor commissioner's complaint filed on Smith's behalf. It was among the disputed claims resolved the following month at the labor commission hearing. Within ten days of the decision that resulted from that hearing, RVLG paid the award in full, thus tendering the amount represented by this particular claim. (Cf., Sayre v. Western Bowl (1946) 76 Cal.App.2d 793, 799, 174 P.2d 466, disapproved by on another point in Reid v. Overland Machined Products (1961) 55 Cal.2d 203, 207-208, 10 Cal.Rptr. 819, 359 P.2d 251.) In light of this evidence, the trial judge was justified in concluding that RVLG did not willfully fail to promptly pay the wages due Smith on account of its inadvertent deductions for unemployment insurance.
In short, we find substantial evidence in this record to support the trial court's implied finding that RVLG did not willfully fail to pay any wages due Smith. We therefore find no error in the court's refusal to award waiting time penalties and we affirm that portion of the judgment challenged by Smith on his cross-appeal.

*884 II. RVLG's Appeal.

A. Standard of Review.
In assessing the contentions raised by RVLG's appeal, we apply the relevant statute to undisputed facts. "The interpretation of this attorney's fees statute and its application to the circumstances in this case are questions of law, subject to independent review on appeal. [Citations.]" (Californians for Population Stabilization v. Hewlett-Packard Co. (1997) 58 Cal.App.4th 273, 294, 67 Cal. Rptr.2d 621 [interpreting § 218.5], abrogated by on another point in Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 171-172, 96 Cal. Rptr.2d 518, 999 P.2d 706. Accord, Farley v. Superior Court (2000) 79 Cal.App.4th 1420, 1426, 95 Cal.Rptr.2d 57.)

B. Entitlement to Fees and Costs.

1. RVLG's Fees and Costs.
RVLG's right to fees and costs depends on whether Smith was successful in his appeal from the commissioner's award. (§ 98.2, subd. (c).)[6] By the terms of the statute, the court "shall" assess costs and reasonable attorney's fees against an appellant who "is unsuccessful in the appeal." (§ 98.2, subd. (c).) As used in the Labor Code, "shall" is mandatory. (§ 15; Morris v. County of Marin (1977) 18 Cal.3d 901, 908, 136 Cal.Rptr. 251, 559 P.2d 606.)
The parties have sharply divergent views of whether Smith was "unsuccessful in the appeal," as that term is used in the statute. Smith claims he was successful in the trial court appeal because he won a judgment there. According to Smith, it is irrelevant whether the trial court judgment represents an improvement over the labor commission award. In any event, Smith argues, the judgment in this case is more favorable than the commissioner's award, because it includes interest on his non-wage claims. Not surprisingly, RVLG disagrees. RVLG asserts that success in the appeal requires the appellant to achieve a better result at trial, something Smith failed to do in this case, notwithstanding the award of interest. Because the parties dispute the meaning of the critical statutory phrase, we are called upon to interpret it.

a. Statutory Interpretation.
"Our primary task in construing a statute is to determine the Legislature's intent. [Citations.] `"The court turns first to the words themselves for the answer."' [Citations.]" (Lundquist v. Reusser (1994) 7 Cal.4th 1193, 1205, 31 Cal.Rptr.2d 776, 875 P.2d 1279.) "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]' " (Californians for Population Stabilization v. Hewlett-Packard Co., supra, 58 Cal.App.4th at p. 295, 67 Cal. Rptr.2d 621, quoting Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) "`Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]'" (Californians for Population Stabilization v. Hewlett-Packard *885 Co., supra, 58 Cal.App.4th at p. 295, 67 Cal.Rptr.2d 621.)
The statute at issue in this case does not define when or how or under what circumstances a party "is unsuccessful in the appeal." RVLG nevertheless argues the statutory language has a plain meaning that deserves a straightforward reading. We disagree. Judges interpreting this statute have reached contradictory conclusions regarding its meaning. (See, e.g., Triad Data Services, Inc. v. Jackson (1984) 200 Cal.Rptr. 418, 153 Cal.App.3d Supp. 1 [compare the majority opinion at pp. 13-15, 200 Cal.Rptr. 418, with the dissenting opinion at pp. 28-33, 200 Cal.Rptr. 418].) That fact alone suggests that the statute does not have a plain meaning. Rather, this is one of those cases in which "the language of the relevant statutes does not provide a ready answer." (Lundquist v. Reusser, supra, 7 Cal.4th at p. 1205, 31 Cal.Rptr.2d 776, 875 P.2d 1279.)
We therefore examine the legislative purpose in enacting the statute. (Dyna-Med Inc. v. Fair Employment & Housing Com., supra, 43 Cal.3d at p. 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) We look first to the statute's cost-shifting effect, which operates as a "disincentive[] to discourage meritless and unwarranted appeals." (Nordquist v. McGraw-Hill Broadcasting Co., supra, 32 Cal.App.4th at p. 575, 38 Cal.Rptr.2d 221. Accord, California Chamber of Commerce v. Simpson (C.D.Cal.1985) 601 F.Supp. 104, 108: "This provision clearly is intended to discourage appeal from the Labor Commissioner's award....") We also look to the legislative history of the enactment, which further demonstrates that its purpose is to discourage frivolous and non-meritorious appeals from labor commission decisions.[7]
Smith urges us to focus instead on important countervailing statutory policies, particularly the policy requiring the prompt payment of wages. We certainly recognize that "the prompt payment of wages due an employee is a fundamental public policy of this state." (Gould v. Maryland Sound Industries, Inc. (1995) 31 Cal.App.4th 1137, 1147, 37 Cal.Rptr.2d 718, citing Pressler v. Donald L. Bren Co. (1982) 32 Cal.3d 831, 837, 187 Cal.Rptr. 449, 654 P.2d 219.) And we have no doubt that the legislature had that important public policy in mind in enacting various provisions of the code. (Ibid. See, e.g., §§ 201-203, 216.) Nevertheless, as RVLG points out, the policy promoting prompt payment of wages was vindicated in this case. Once the labor commissioner determined what Smith was owed, RVLG promptly tendered payment in full. Thus, the situation before us is not one in which the employer "further delayed the wages due [employee]" by taking an appeal from the labor commission's award. (Compare, Triad Data Services, Inc. v. Jackson, supra, 153 Cal.App.3d at p. Supp. 14, 200 Cal.Rptr. 418.) In the factual context of this case, then, there is no conflict between the policy requiring the prompt payment of wages and the policy promoting the finality of commissioner awards.
Smith also asserts that the public policy underlying the statute is protection of *886 the employee, not the employer. Based on that assertion, he urges a disparate application of section 98.2, subdivision (c), depending on whether the party seeking judicial review is the employer or the employee.
In our view, however, the statute neither compels nor warrants the unequal treatment of employers and employees. Our conclusion is based, in the first instance, on the language and structure of the statute itself. In recent amendments to section 98.2, the legislature imposed certain bonding requirements that are applicable only to employer appeals. (§ 98.2, subd. (b); see Stats.2000, ch. 876 § 2.) Yet in the very next paragraph of the statute, which contains the cost-shifting provisions at issue here, the legislature made no distinction between employers and employees. That omission suggests a legislative intent to apply this cost-shifting provision evenhandedly, to employers and employees alike. Even-handed application is consistent with the statute's policy. (Cf., Bank of San Pedro v. Superior Court (1992) 3 Cal.4th 797, 804-805, 12 Cal.Rptr.2d 696, 838 P.2d 218: "Not to require an undertaking in this case would further thwart the policy of [Code of Civil Procedure] section 998 by creating an anomalous disparity between plaintiffs and defendants.... An evenhanded application of the requirement for an undertaking on appeal best effectuates the policy of encouraging settlements under section 998." See also, Triad Data Services, Inc. v. Jackson, supra, 153 Cal.App.3d at p. Supp. 29, 200 Cal.Rptr. 418 [dis. opn. of Foster, P.J., fn. omitted]: "Nothing in the statute or the legislative history suggests that the Legislature in enacting section 98.2, subdivision [(c)], intended that it operate unilaterally against employers or that it was designed to serve the purpose of preventing the withholding of `just wages due a discharged or terminated employee.' To the contrary, the apparent purpose of it is to give force and effect to the Labor Commissioner's award by discouraging either party from appealing from the award on other than meritorious grounds".) Thus, while various Labor Code provisions surely have employee protection as their overriding purpose, we cannot agree that section 98.2 is among them.
In construing this statute, we are mindful of the important public policies served by other Labor Code provisions, including the prompt payment of wages and the protection of employees. But we also recognize that there are cases in which those policies may conflict with other worthy legislative objectives, such as promoting the finality of labor commission awards. With due regard for the competing policies, we conclude that section 98.2, subdivision (c) is intended to discourage unwarranted appeals from labor commissioner awards, whether such appeals are taken by employers or employees. We interpret the statute with that purpose in mind.
To aid us in our task of statutory interpretation, we consider whether other legislative enactments offer guidance.

b. Analogous Statutory Schemes.
RVLG likens section 98.2, subdivision (c) to other statutory schemes that `feature one-sided fee-shifting provisions designed to discourage unnecessary trials. One such scheme governs judicial arbitration. (Code Civ. Proc, § 1141.10 et seq.; see generally, 3 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) ch. 13, Judicial Arbitration and Mediation, pp. 13-1 to 13-81.) Under the statute, a party who is dissatisfied with judicial arbitration may elect trial de novo. (Code Civ. Proc, § 1141.20.) In a trial de novo following judicial arbitration, the case is tried as though no previous *887 decision had been made. (Cal. Rules of Court, rule 1616(c); Weber v. Kessler (1981) 126 Cal.App.3d 1033, 179 Cal.Rptr. 299.) But a party requesting trial de novo who fails to obtain a more favorable result must pay the opposing party's costs and attorneys' fees as authorized by contract or statute. (Code Civ. Proc, § 1141.21.)[8] "The trial de novo provides the losing party with yet another chance to present its case, but that party also assumes a risk by requesting the trial: if the judgment for the party electing the trial de novo is not more favorable, either in the amount of damages awarded or the type of relief sought, than was the arbitration award, that party must reimburse the county for the compensation paid to the arbitrator, as well as paying the opposing party the costs it has incurred as a result of the trial." (Weber v. Kessler, supra, 126 Cal. App.3d at p. 1036, 179 Cal.Rptr. 299.) "The Legislature has clearly enacted a policy of encouraging the parties to accept arbitration awards. The legislative policy promotes judicial economy in a world of limited courtroom space and limited tax dollars." (Bhullar v. Tayyab (1996) 46 Cal.App.4th 582, 589-590, 54 Cal.Rptr.2d 17.) The fee-shifting provisions of the judicial arbitration statute thus are intended to "encourage parties to accept reasonable arbitration awards" and "to discourage trials de novo." (Phelps v. Stostad (1997) 16 Cal.4th 23, 29, 65 Cal.Rptr.2d 360, 939 P.2d 760.)
The law governing statutory settlement offers features similar cost-shifting provisions. (Code Civ. Proc, § 998.)[9] The *888 policy underlying that statute "is to encourage settlement by providing a strong financial incentive to a partywhether it be a plaintiff or a defendantwho fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer." (Bank of San Pedro v. Superior Court, supra, 3 Cal.4th at p. 804, 12 Cal.Rptr.2d 696, 838 P.2d 218. See generally, 3 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, supra, ¶¶ 12:647-12:725, pp. 12(II)-25 to 12(II)-37.) Put another way, the statute aims "to encourage the settlement of lawsuits prior to trial, and penalize litigants who fail to accept what, in retrospect, is determined to have been a reasonable settlement offer." (Bodell Construction Co. v. Trustees of Cal. State University (1998) 62 Cal.App.4th 1508, 1518, 73 Cal.Rptr.2d 450.)
The cost-shifting provisions of sections 998 and 1141.21 of the Code of Civil Procedure thus serve to discourage unnecessary trials. Labor Code, section 98.2, subdivision (c) vindicates the same policy. The judicial arbitration statute presents a particularly compelling model, for it shares similar procedural provisions as well as a common purpose with section 98.2. Like the labor code, the judicial arbitration statute permits dissatisfied parties to elect trial de novo. (Weber v. Kessler, supra, 126 Cal.App.3d 1033, 179 Cal.Rptr. 299.) That election carries attendant financial risks, however. (Ibid.) In both arbitration and labor cases, a request for trial de novo vacates the award, putting the case at large as though no earlier proceedings had occurred. (See, Wagy v. Broum (1994) 24 Cal.App.4th 1, 8, 29 Cal.Rptr.2d 48 [arbitration]; Post v. Palo/Haklar & Associates, supra, 23 Cal.4th at pp. 947-948, 98 Cal.Rptr.2d 671, 4 P.3d 928 [labor appeals].) Furthermore, like labor commission decisions, judicial arbitration "is necessarily followed by court action, consisting of either a trial de novo [citation] or entry of judgment on the award [citation]." (Joyce v. Black (1990) 217 Cal.App.3d 318, 322, 266 Cal.Rptr. 8.)
Smith resists comparison between the statutes, arguing that the legislature's failure to use the same language in the Labor Code as it did in the Code of Civil Procedure makes the analogy between the codes "fall flat." We acknowledge that different terminology is employed in the two codes. In the Code of Civil Procedure's provisions, cost shifting depends on whether the trial court judgment is "more favorable" than the rejected settlement offer or arbitration award. (See Code Civ. Proa, § 998, subds. (c)-(e); Code Civ. Proa, § 1141.21.) Under the Labor Code, cost shifting is required when the party rejecting the labor commissioner's award is "unsuccessful in the appeal." (§ 98.2, subd. (c).) And as Smith points out: "`It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.'" (Broum v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 725, 257 Cal.Rptr. 708, 771 P.2d 406, quoting Ford Motor Co. v. County of Tulare (1983) 145 Cal.App.3d 688, 691, 193 Cal. Rptr. 511.) But that principle does not assist Smith in this case, for it applies only where the legislature has changed or excluded *889 a term by design. (Ford Motor Co. v. County of Tulare, supra, 145 Cal.App.3d at p. 691, 193 Cal.Rptr. 511.)
In this case, it does not appear that the legislature's failure to use identical language in the two codes was either intentional or meaningful. In our view, the differences in terminology between the two codes do not weaken the analogy, particularly since the applicable provisions of both codes are designed to achieve the same worthy purposediscouraging unnecessary trials. Again, we keep that statutory purpose in mind in determining whether Smith was successful in the appeal for purposes of cost shifting under the statute.
Other courts have addressed the question of success in labor commission appeals. We now examine those previous judicial decisions to see what guidance they offer in this case.

c. Case Law.
As noted above, Smith takes the position that any favorable judgment in the trial court constitutes success in the appeal, regardless of whether that judgment represents an improvement over the labor commission award. Smith cites two cases in support of his position: Triad Data Services, Inc. v. Jackson, supra, 200 Cal. Rptr. 418, 153 Cal.App.3d Supp. 1 and Cardenas v. Mission Industries, supra, 226 Cal.App.3d 952, 277 Cal.Rptr. 247.
RVLG takes the opposite view, arguing that, at a minimum, success in a labor commission appeal requires a better result at trial than at the administrative hearing. In support of its interpretation of the statute, RVLG relies on the reasoning (though not the results) in the same two cases, Triad and Cardenas.
The Triad case was decided by the appellate department of the Los Angeles Superior Court. (Triad Data Services, Inc. v. Jackson, supra, 153 Cal.App.3d Supp. 1, 200 Cal.Rptr. 418.) In that case, the employee won an award at the labor commission that included $2,275 in wages plus $2,310 in waiting time penalties, prompting the employer to seek judicial review. Trial de novo in the municipal court also resulted in a judgment for the employee, but in a much lower amount: the court reduced her wage award by more than $600 and disallowed waiting time penalties altogether. Despite the reduction in the employee's recovery, the municipal court awarded her attorney's fees. The employer appealed to the appellate department of the superior court. In that appeal, the employer sought "to establish ... success in the trial de novo by comparing the judgment issued by the trial court with the award or decision of the commissioner." (Id. at p. Supp. 14, 200 Cal.Rptr. 418.) The appellate department rebuffed the employer's argument, finding it "without merit." (Ibid.) The appellate department concluded that an employer seeking judicial review is "unsuccessful in the appeal" if trial de novo results in an award to the employee, even if it is lower than that originally awarded by the labor commissioner.
As the Triad court put it: "We reason that the statutory language contained in section 98.2, subdivision (b) [now (c)] of `unsuccessful in such appeal', should be given the inverse meaning to that of `prevailing party' which is well settled in this state. The prevailing party is the party in whose favor final judgment is rendered. [Citation.] `The general rule is that net recovery is the basis upon which attorneys' fees are computed. [Citation.]' [Citations.] We find that the defendant [employee] `prevailed,' or, conversely, the plaintiff [employer] was `unsuccessful' below. The trial judge properly granted attorney's fees and costs to defendant [employee] pursuant to ... section 98.2." (Triad *890 Data Services, Inc. v. Jackson, supra, 153 Cal.App.3d at p. Supp. 15, 200 Cal.Rptr. 418.)
In the Cardenas case, the Second District Court of Appeal came to a similar conclusion. (Cardenas v. Mission Industries, supra, 226 Cal.App.3d at p. 960, 277 Cal.Rptr. 247.) There, the labor commissioner awarded the employee overtime pay, plus a waiting-time penalty, and interest. (Id. at pp. 955-956, 277 Cal.Rptr. 247.) The employer appealed to the trial court. After trial de novo, the court rendered judgment for the employee. The judgment included compensation for overtime pay, but in a reduced amount; it also included the waiting-time penalties and interest previously awarded plus statutory attorney's fees. (Ibid.) On appeal, the employer argued against the award of fees. The employer reasoned that it was not "unsuccessful in the appeal" for purposes of the fee statute, "because the court's award of overtime pay was less than that of the Labor Commissioner...." (Id. at pp. 959-960, 277 Cal.Rptr. 247.)
The Second District Court of Appeal rejected the employer's argument. It reasoned as follows: "Appeal to a court of the Labor Commissioner's order is not an appeal in the usual sense; rather, it is a trial de novo. (... § 98.2[, subd.] (a).) For an appellant to be considered the successful party when seeking judicial review of an award of the Labor Commissioner, the judgment of the trial court must completely eliminate the Labor Commissioner's prior award. (See Triad Data Services, Inc. v. Jackson[, supra,] 153 Cal.App.3d [at p. Supp. 14, 200 Cal.Rptr. 418]....) ... [¶] In the present case, the judgment of the trial court was not in favor of [the employer]. The court found against [the employer] on all the issues in this case. The fact that the amount of overtime wages awarded by the Labor Commissioner was reduced by the trial court is irrelevant. [The employee] was the prevailing party." (Cardenas v. Mission Industries, supra, 226 Cal.App.3d at p. 960, 277 Cal.Rptr. 247.)
According to RVLG, the "basic teaching" of Cardenas and Triad is this: to succeed in a labor commission appeal, the party seeking judicial review must obtain a complete reversal of the administrative award and not just a more favorable judgment. Smith disagrees. He asserts that the Cardenas and Triad decisions stand for the proposition that the labor commissioner's award must be wholly disregarded in determining success in the trial de novo.
We share Smith's understanding of the Cardenas and Triad cases, but those decisions do not assist him here. For one thing, Cardenas and Triad are factually distinguishable from the case before us, since both involved employer appeals. This distinction carries significant practical consequences. Although the statute does not distinguish between employers and employees, and although appeals by either party may slow wage payments, only employer appeals involuntarily delay payment. Even Smith acknowledges that an employee appeal "does not thwart the overriding policy interest in making an employer pay wages when due." To the extent that the reasoning of the two cases derives from the fact that they were both employer appeals, their rationale is inapplicable here.
Quite apart from the important factual differences, and more fundamentally, we disagree with Triad and Cardenas insofar as they hold that the labor commissioner's decision must be disregarded in applying section 98.2. We take the contrary view. As we interpret the statute, a party's success in the appeal cannot be determined without comparing the trial court judgment to the earlier award from which the appeal was taken.
*891 In reaching that conclusion, we again find an apt analogy in the judicial arbitration statutes. In a trial de novo after judicial arbitration, the court "hears the evidence and makes its decision based on that evidence. It is imperative in cases such as these that the trier of fact reach its decision independently and without any reference to the arbitrator's findings...." (Weber v. Kessler, supra, 126 Cal.App.3d at p. 1036, 179 Cal.Rptr. 299.) "However, in order to comply with [the cost-shifting provisions of Code of Civil Procedure] section 1141.21 and insure that the costs of the arbitration and trial are borne by the proper party, the court must `refer' to the arbitrator's findings at some point prior to entry of judgment." (Ibid.)
The same logic applies with equal force to de novo trials following labor commission hearings. Here, too, the trial court hears the evidence anew and, based on that evidence, makes its decision wholly independent of the labor commissioner's findings. (Post v. Palo/Haklar & Associates, supra, 23 Cal.4th at pp. 947-948, 98 Cal.Rptr.2d 671, 4 P.3d 928.) The court thus hears the dispute "as if it had never been before the labor commissioner." (Collier & Wallis, Ltd. v. Astor, supra, 9 Cal.2d at p. 205, 70 P.2d 171. See also, Cardenas v. Mission Industries, supra, 226 Cal.App.3d at p. 961, 277 Cal.Rptr. 247.) But the requirement of a new trial is satisfied as soon as the evidentiary proceeding ends with a decision on the merits by the trial court. The de novo trial requirement in no way forecloses subsequent consideration of the labor commissioner's decision for purposes of determining success in the trial court. To the contrary, in order to comply with the mandate of section 98.2 and to insure that the proper party bears the costs of the de novo trial, the court must compare its judgment to the commissioner's award in order to assess the appealing party's success. To do otherwise contravenes the statute's purpose. As the dissenting judge in Triad observed: "An employee dissatisfied with an award might appeal and, after a trial de novo, recover no greater, or even a far lesser sum, but under the majority's reasoning he would not be `unsuccessful in such appeal.' The result of this reasoning is to penalize employers for taking meritorious appeals and to reward employees for taking unmeritorious ones." (Triad Data Services, Inc. v. Jackson, supra, 153 Cal. App.3d at p. Supp. 30, 200 Cal.Rptr. 418 [dis. opn. of Foster, P.J.].)
As we explained earlier, the legislative purpose behind section 98.2, subdivision (c) is to discourage meritless labor commission appeals by either party. The determination of whether an appeal lacks merit is made with the benefit of hindsight: like analogous statutes, section 98.2 penalizes those who reject what, in retrospect, was a reasonable award. (Cf., Bodell Construction Co. v. Trustees of Cal. State University, supra, 62 Cal.App.4th at p. 1518, 73 Cal.Rptr.2d 450 [settlement offer].) Thus, in our view, the statute's purpose is best served by a post-trial comparison of the judgment and the earlier award to determine if the party seeking judicial review achieved a more favorable result at trial. We disagree with Triad and Cardenas to the extent that they hold to the contrary.

d. Success at Trial.
Under our interpretation of the statute, the party seeking review of a labor commission decision is "unsuccessful in the appeal" unless the resulting judgment is more favorable to that party than was the administrative award from which the appeal was taken. In our view, success in a labor commission appeal does not require a complete reversal of the earlier award.
*892 In so holding, we disagree with the contrary view expressed in Cardenas. (See, Cardenas v. Mission Industries, supra, 226 Cal.App.3d at p. 960, 277 Cal.Rptr. 247: "For an appellant to be considered the successful party when seeking judicial review of an award of the Labor Commissioner, the judgment of the trial court must completely eliminate the Labor Commissioner's prior award.") A rule requiring wholesale elimination of the administrative award as a predicate to success at trial is at odds with the underlying statutory policy, for it operates to punish appellants who partially vindicate their claims or defenses. Because the statute is intended to discourage only meritless appeals, such a result is untenable.
Under our holding, then, an incremental improvement over the administrative award constitutes success in a labor commission appeal. Nevertheless, there must be some improvement, since the point of the statute is to discourage trial where there is little likelihood that the outcome would be different if heard by a judge. (Cf., Wagy v. Brown, supra, 24 Cal.App.4th at p. 10, 29 Cal.Rptr.2d 48, fn. 5: "[I]n the relatively infrequent situation where the [statutory settlement] offer and judgment are equal ... as with a `push' in the game of blackjack, the status quo ante prevails.") Thus, appellants who fail to gain at least some ground at trial are "unsuccessful in the appeal" for purposes of the statute.
Applying the statute as we have interpreted it, we compare the judgment won at trial with the earlier administrative award to determine whether the judgment was more favorable. In this case, the judgment and the award are identical, in dollar amount and in elements of damage, except that the judgment includes prejudgment interest on Smith's non-wage claims, while the award did not. Relying on the judicial grant of interest, Smith asserts that he did in fact obtain a more favorable judgment after trial de novo. RVLG assigns the court's award of prejudgment interest on Smith's non-wage claims as error, based on its claim that the underlying statutes authorize an award of interest only on unpaid wages.
As RVLG correctly observes, the governing statutory scheme authorizes an administrative award of interest only on unpaid wages and not on other claims. (See §§ 98.1, 218.6, 200. Cf., American Federation of Labor v. Unemployment Ins. Appeals Bd. (1996) 13 Cal.4th 1017, 1022, 56 Cal.Rptr.2d 109, 920 P.2d 1314; Currie v. Workers' Comp. Appeals Bd. (2001) 24 Cal.4th 1109, 104 Cal.Rptr.2d 392,17 P.3d 749.)[10]
*893 But the statutory constraints on the labor commissioner's authority do not similarly bind the trial court hearing the matter anew. (Cf., Sales Dimensions v. Superior Court (1979) 90 Cal.App.3d 757, 761-762, 153 Cal.Rptr. 690 [in labor commission appeals, discovery and consolidation permitted in trial court's discretion].) As we have stressed repeatedly, the labor commission appeal is a de novo trial in the fullest sense. "Once having invoked the jurisdiction of the superior court by filing a timely notice of appeal the aggrieved party is entitled to a full new trial in the superior court according to the rules and procedures applicable." (Buchwald v. Katz (1972) 8 Cal.3d 493, 502, 105 Cal.Rptr. 368, 503 P.2d 1376 [trial after labor commission arbitration proceeding under Artists' Managers Act (now, Talent Agencies Act)].) When hearing a labor commission appeal, the trial court thus possesses its usual plenary jurisdiction, which includes the authority to award interest in a proper case. (See Civ.Code, § 3287. Cf., American Federation of Labor v. Unemployment Ins. Appeals Bd., supra, 13 Cal.4th at p. 1022, 56 Cal. Rptr.2d 109, 920 P.2d 1314.) We find no error in the trial court's award of interest on Smith's nonwage claims.
The question remains, however, whether it is appropriate to consider the trial court's grant of interest in evaluating whether Smith's judgment was more favorable than the earlier administrative award in his favor. So far as our research discloses, that question is one of first impression. In answering it, we are once again guided by the policy of the statute to give effect and finality to labor commission awards by discouraging unnecessary appeals. (Cf., Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co. (1999) 73 Cal.App.4th 324, 330, 86 Cal.Rptr.2d 398.) We believe that the statutory purpose is best served by defining success at trial without regard to interest on nonwage claims, which the labor commissioner was powerless to award.
In addition, in our opinion, success in the trial de novo should be assessed only after excluding costs or damages that result solely from continuation of the litigation. In forming that opinion, we find guidance in cases involving statutory settlement offers under Code of Civil Procedure section 998. In decisions interpreting that statute, costs and damages incurred after the settlement offer are excluded from the judgment in determining whether it was more favorable than the settlement offer. (Bodell Construction Co. v. Trustees of Cal. State University, supra, 62 Cal.App.4th at p. 1521, 73 Cal.Rptr.2d 450 [attorney's fees]; Wilson v. Wal-Mart Stores, Inc. (1999) 72 Cal. App.4th 382, 393-394, 85 Cal.Rptr.2d 4 [prejudgment interest]; Harvard Investment Co. v. Gap Stores, Inc. (1984) 156 Cal.App.3d 704, 713, 202 Cal.Rptr. 891 *894 [prejudgment interest].) Just as the inclusion of coste incurred after an offer is made defeats the purpose of section 998, so would the inclusion of damages incurred after the date of an offer." (Harvard Investment Co. v. Gap Stores, Inc., supra, 156 Cal.App.3d at p. 713, 202 Cal.Rptr. 891, original italics.) An increase in the judgment that results solely from "continuation of the litigation and the concomitant incurring of postoffer `continuing' damages is clearly contrary to the legislative purpose of section 998, which is to encourage litigants to accept reasonable offers to compromise prior to trial." (Bodell Construction Co. v. Trustees of Cal. State University, supra, 62 Cal.App.4th at p. 1522, 73 Cal. Rptr.2d 450, citing Harvard Investment Co. v. Gap Stores, Inc., supra, 156 Cal. App.3d at p. 713, 202 Cal.Rptr. 891.) The same reasoning applies to labor commission appeals. We conclude that the legislative purpose of section 98.2 is defeated when costs or damages that result solely from a party's continuation of the litigation, such as post-award interest, are included in the judgment for purposes of assessing success on appeal.
In our view, then, success in a labor commission appeal is properly measured by excluding prejudgment interest on nonwage claims, which is an element of damages unavailable in the administrative forum, and by disregarding postaward litigation costs and damages, before comparing the judgment with the earlier award. This is the statutory measure of success that must be employed by the trial court.
We remand this matter to the trial court for its determination of whether Smith was "unsuccessful in the appeal" for purposes of section 98.2, subdivision (c), under the rule we have announced, and for its consideration of fees and costs based on that determination.

2. Smith's Costs.
RVLG's amended notice of appeal in this court challenges "those portions of the Judgment ... that award costs to ... Smith." We note, however, that the judgment in Smith's favor does not include an award of his costs, as he did not request costs until after entry of judgment. Nor does the record before us contain a later judgment or order awarding costs to Smith. Thus, it is not clear on this record that the trial court in fact gave Smith his costs. Nevertheless, both parties have briefed the issue of Smith's entitlement to costs. For that reason, and to avoid the potential for future disputes, we address that question on the merits. (Cf., Grant v. List & Lathrop (1992) 2 Cal.App.4th 993, 997, 3 Cal.Rptr.2d 654.)
We agree with RVLG that the trial court erred in awarding Smith his costs of suit. Under section 98.2, subdivision (c), the party taking an appealeven if wholly successfulis not entitled to recover costs. The best an appellant can do is avoid paying the other party's costs and fees. "Costs (and attorney's fees) are not awarded to a successful appellant under Labor Code section 98.2, but are only allowed against an unsuccessful appellant." (Dawson v. Westerly Investigations, Inc. (1988) 251 Cal.Rptr. 633, 204 Cal.App.3d Supp. 20, 24, original italics. Accord, Henry v. Amrol, Inc. (1990) 272 Cal.Rptr. 134, 222 Cal.App.3d Supp. 1, 7-8. See also, Nordquist v. McGraw-Hill Broadcasting Co., supra, 32 Cal.App.4th at p. 574, 38 Cal.Rptr.2d 221.) This cost-shifting provision supercedes the general rule that the prevailing party in an action is entitled to recover costs. "It is a fundamental principle that the prevailing party is entitled, as a matter of right, to recover costs in an action or proceeding (see Code Civ. Proc., § 1032, subd. (b)); however, section 1032, *895 subdivision (b) allows for exceptions to this principle. Labor Code section 98.2 presents such an exception." (Dawson v. Westerly Investigations, Inc., supra, 204 Cal.App.3d at p. Supp. 24, 204 Cal.App.3d Supp. 20, fn. omitted.) Our high court has expressly approved this view of the statute, albeit in dicta. (See, Murillo v. Fleetwood Enterprises, Inc. (1998) 17 Cal.4th 985, 997, 73 Cal.Rptr.2d 682, 953 P.2d 858: "We agree the cost-shifting scheme [of Labor Code section 98.2] at issue in Dawson supplants the general rule set forth in [Code of Civil Procedure] section 1032[, subdivision] (b).") We endorse that view as well.
Because Smith was the party who challenged the labor commissioner's decision, he could not recover costs even if successful at trial. If the trial court in fact granted Smith his costs, it erred in doing so. We therefore reverse any judgment or order granting Smith his costs and we order Smith's memorandum of costs stricken.

DISPOSITION
We reverse the judgment and remand this matter to the trial court with instructions to determine whether Smith was unsuccessful in his appeal under the rule we have announced, and, if so, to determine and award RVLG's costs and reasonable attorney's fees. We also reverse any subsequent order or judgment awarding Smith his costs, and we order Smith's memorandum of costs stricken. RVLG shall have its costs on appeal.
PREMO, Acting P.J., and BAMATTRE-MANOUKIAN, J., concur.
NOTES
[1] Further statutory references are to the Labor Code unless otherwise specified.
[2] The Labor Commissioner is Chief of the Division of Labor Standards Enforcement. (§ 21.)
[3] Section 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting."
[4] Section 203 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment. [11] Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise."
[5] The trial court did not explain its denial of waiting time penalties. Thus, according to Smith, "one cannot determine whether or not the trial court denied penalties because it found that RVLG had presented a good faith defense, or because the trial court believed that it had discretion as to awarding the penalties even in the absence of a good faith defense. The latter interpretation is most probable...." Smith's choice of interpretation ignores a fundamental principle of appellate law: the presumption of correctness on a silent record. "On appeal a judgment or order of the trial court is presumed correct. All intendments and presumptions are indulged in to support it on matters as to which the record is silent." (Fundamental Investment etc. Realty Fund v. Gradow (1994) 28 Cal. App.4th 966, 971, 33 Cal.Rptr.2d 812.) On this record, we must presume the trial court found that RVLG had not acted willfully in withholding wages due Smith.
[6] In its entirety, the relevant provision reads as follows: "If the party seeking review by filing an appeal to the municipal or superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal." (§ 98.2, subd. (c).)
[7] We granted RVLG's request for judicial notice of documents bearing on the legislative history of section 98.2, subdivision (c), which was first added to the Labor Code as subdivision (b) by Senate Bill 1397 in 1980. Among the documents we judicially noticed were the Analysis of Senate Bill 1397 prepared for the Assembly Committee on Labor, Employment, and Consumer Affairs, dated June 17, 1980, and the Enrolled Bill Memorandum to Governor regarding Senate Bill 1397, dated July 11, 1980. Both of those documents state: "The purpose of this bill is to reduce frivolous and non-meritorious appeals of the Labor Commissioner's decisions regarding payment of wages."
[8] In pertinent part, Code of Civil Procedure section 1141.21 provides as follows: "(a) If the judgment upon the trial de novo is not more favorable in either the amount of damages awarded or the type of relief granted for the party electing the trial de novo than the arbitration award, the court shall order that party to pay the following [enumerated] nonrefundable costs and fees, unless the court finds in writing and upon motion that the imposition of such costs and fees would create such a substantial economic hardship as not to be in the interest of justice...."
[9] In pertinent part, Code of Civil Procedure section 998 provides as follows: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of trial or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. [¶] ... [¶]
"(c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant.
"(2)(A) In determining whether the plaintiff obtains a more favorable judgment, the court or arbitrator shall exclude the postoffer costs.
"(B) It is the intent of the Legislature in enacting subparagraph (A) to supersede the holding in [Encinitas Plaza Real v. Knight (1989)] 209 Cal.App.3d 996 [257 Cal.Rptr. 646], that attorney's fees awarded to the prevailing party were not costs for purposes of this section but were part of the judgment.
"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs. "(e) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the costs under this section, from the time of the offer, shall be deducted from any damages awarded in favor of the plaintiff. If the costs awarded under this section exceed the amount of the damages awarded to the plaintiff the net amount shall be awarded to the defendant and judgment or award shall be entered accordingly...."
[10] As amended in 2000, section 98.1, subdivision (c), provides as follows: "All awards granted pursuant to a hearing under this chapter shall accrue interest on all due and unpaid wages at the same rate as prescribed by subdivision (b) of Section 3289 of the Civil Code. The interest shall accrue until the wages are paid from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2." (Italics added.) The 2000 amendment changed the interest rate reference in section 98.1, subdivision (c); it did not alter the provision's application solely to "due and unpaid wages." (See Stats.2000, ch. 876, § 1.)

To the same effect is section 218.6, added in 2000, which governs independent civil actions for the nonpayment of wages. It provides: "In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2." (Italics added.)
Section 200, subdivision (a), defines "wages." It reads as follows: "As used in this article: (a) `Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."
As applied by the labor commissioner, the statutory definition of "wages" excludes expense reimbursements due the employee. See, Division of Labor Standards Enforcement's Operations and Procedure Manual, volume 2, September 1989, section 10.04, page 2: "`Any wages' refers to the definition of wages in Section 200 and, if the employee is discharged or quits, it includes any amount due as wages. Note that this does not include expenses or other payments due an employee." This interpretation is entitled to our respect and consideration. While statutory construction is ultimately a judicial function, an administrative agency's interpretation of its governing statutes "`will be accorded great respect by the courts and will be followed if not clearly erroneous.'" (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7, 78 Cal.Rptr.2d 1, 960 P.2d 1031.)